UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BLAKE NIESWAND

    Plaintiff,

V

CHARLES MILNE and COX HODGMAN
& GIARMARCO, P.C. a domestic professional service
corporation, jointly and severally,

    Defendants

Case No.:  2:07-cv-10541
Hon. Paul D. Borman
Magistrate Donald A. Scheer

/

John J. Cooper (P53738)
Cooper Law Firm, PLLC
Attorney for Plaintiff
345 Diversion #304
Rochester, MI 48307
248-652-5331
johnjcooper@sbcglobal.net

Kathleen Klaus P67207
Maddin Hauser
Attorney for Charles Milne
28400 Northwester Hwy.
Southfield, MI 48034
248-827-1899
khk@maddinhauser.com

Theresa M. Asoklis (P42709)
Collins, Einhorn, Farrell & Ulanoff, P.C.
Attorney for Defendant Cox Hodgman
4000 Town Center #909
Southfield, MI 48075
248-355-4141
Theresa.asoklis@ceflawyers.com

---

## DEFENDANT COX, HODGMAN & GIARMARCO P.C.'S MOTION FOR SUMMARY JUDGMENT

Defendant Cox, Hodgman & Giarmarco, P.C., (n/k/a Giarmarco, Mullins & Horton)

through its counsel, Collins, Einhorn, Farrell & Ulanoff, P.C. and for its motion for summary

judgment relies on Fed. R. Civ. P. 56 and the attached brief and exhibits.

/s Theresa M. Asoklis
Theresa M. Asoklis P42709
Attorney for Defendant
Cox Hodgman & Giarmarco, P.C
Theresa.asoklis@ceflawyers.com
P42709

# TABLE OF CONTENTS

**Page**

Index of Authorities ……………………………………………….. ii

Statement of Issues Presented ………………………………………… iii

I.   Introduction …………………………………………….. 1

II.  Statement of Pertinent Facts …………………………………..... 2

III. Standard of Review ……………………………………..……… 7

IV.  Argument I …………………………………………………… 7

To prove an employer is vicariously liable for negligent acts of its employees, a plaintiff must show that an employment relationship existed at the time of the alleged negligence. Mr. Milne was not an employee of Cox Hodgman at the time of the alleged malpractice.  Additionally, plaintiff cannot prove an ostensible agency existed because there was no conduct on the part of Cox Hodgman that could reasonably lead plaintiff to believe Mr. Milne was their agent, where plaintiff admits he was informed otherwise……………………………………………………….. 7

    A.   Mr. Milne was not an employee of Cox Hodgman on the date of the alleged malpractice, i.e., the date that Mr. Milne filed the bankruptcy petition ……………………………… 8

    B.   Plaintiff cannot show an agency-principal relationship Between Mr. Milne and Cox Hodgman at the time of the alleged malpractice based on ostensible/apparent agency theories.. ……………………………………………… 9

V.   Argument II ………………………………………………….. 14

Blake Nieswand's legal malpractice claim against Cox Hodgman must be dismissed because he is not the real party in interest and therefore lacks standing.  Blake Nieswand's bankruptcy trustee had the exclusive right to assert this malpractice claim, but failed to file suit within the limitations period……………………………………………………… 14

VI.  Relief Requested …………………………………………….. 17

i

# INDEX OF AUTHORITIES

## Cases

*Alar* v. *Mercy Memorial*, 208 Mich. App. 518 (1995) ................................................................ 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986) ..................................... 7

*Bauchan v Cheatham & Acker, P.C.*, 2000 WL 33415950 (Mich App July 21, 2000) ............. 16

*Bauer v. Commerce Union Bank*, 859 F.2d 438 (6th Cir.1988) ................................................. 15

*Celotex Corp v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) ............................................... 7

*Central Wholesale Co v Sefa*, 351 Mich 17 (1957) ................................................................. 10

*Chapa v. St Mary's Hospital*, 192 Mich. App. 29 (1991) ......................................................... 9

*Costanza v. St John Hospital*, unpublished per curium in the Court of Appeals, issued
    December 26, 2000 (Docket No. 215854) ......................................................................... 12

*Drake v. Muskegon General Hospital*, unpublished per curium in the Court of Appeals, issued
    May 26, 2000 (Docket No. 217747) ................................................................................ 12

*Hall v. Joseph*, unpublished per curium in the Court of Appeals, issued March 2, 1999 (Docket
    No. 206282) .................................................................................................................. 12

*Huffman v Schafer*, 2001 WL 951615 (Mich App, Aug 21, 2001) ........................................... 15

*In re Union City Milk*, 329 Mich. 506 (1951) ....................................................................... 10

*In re Van Dresser Corp*, 128 F3d 945 (6th Cir 1997) ............................................................. 15

*Inglis v. Providence Hospital*, unpublished per curium in the Court of Appeals, issued August
    26, 2004 (Docket No. 247066) ....................................................................................... 11

*Le Pointe v. Chevrette*, 264 Mich. 482 (1933) ..................................................................... 10

*Little v. Howard Johnson Co.*, 183 Mich. App. 675 (1990) ...................................................... 8

*Matter of Tvorik*, 83 BR 450, 456 (WD Mich1988) ............................................................... 15

*Meretta v. Peach*, 195 Mich. App. 695 (1992) ..................................................................... 10

*Miteen v Genesys Regional Medical Center*, unpublished per curium in the Court of Appeals,
    issued January 24, 2006 (Docket No. 262410) .................................................................. 12

*Putnam v. Sezgin*, unpublished per curium in the Court of Appeals, issued December 2, 2004
    (Docket No. 248053) ..................................................................................................... 12

*Revitzer v. Trenton Medical Center, Inc.*, 118 Mich. App. 169 (1982) ...................................... 8

*Rogers v. J.B. Hunt Transport, Inc.*, 244 Mich. App. 600 (2001), *rev'd on other grounds* 466
    Mich. 645 (2002) ........................................................................................................... 8

*Sheinkopf v. Stone*, 927 F2d 1259 (1st Cir. 1991) ................................................................ 13

*Shinabarger v. Phillips*, 370 Mich. 135 (1963) ..................................................................... 10

*Tansil v. Sherrod*, unpublished per curium in the Court of Appeals, issued November 26, 2002
    (Docket No. 237002) ..................................................................................................... 11

*Vanstelle v. Macaskill*, 255 Mich. App. 1 (2003) .................................................................. 11

## Rules

Fed. R. Civ. P. 56(c) ......................................................................................................... 7

Fed. R. Civ. P. 56 ............................................................................................................ 17

## Statutes

11 U.S.C. § 541(a)(1) ....................................................................................................... 15

11 U.S.C. § 323(b) ........................................................................................................... 15

11 U.S.C. §§ 541, 554 ...................................................................................................... 16

(248) 355-4141   4000 TOWN CENTER STE 909, SOUTHFIELD, MI 48075   LAW OFFICES   COLLINS, EINHORN, FARRELL & ULANOFF, P.C.

ii

## STATEMENT OF ISSUES PRESENTED

I.     Can Cox Hodgman be vicariously liable for the alleged negligence of its former employee Charles Milne, where Milne left the firm and plaintiff consented to Milne's representation before plaintiff's bankruptcy petition was filed?

II.     Although plaintiff received an order abandoning his claims against Mr. Milne, the order did not abandon any claim against Cox Hodgman. Does plaintiff therefore lack standing to bring this claim?

LAW OFFICES  COLLINS, EINHORN, FARRELL & ULANOFF, P.C.  4000 TOWN CENTER  STE 909,  SOUTHFIELD, MI 48075  (248) 355-4141

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BLAKE NIESWAND

     Plaintiff,

V

CHARLES MILNE and COX HODGMAN
& GIARMARCO, P.C. a domestic professional service
corporation, jointly and severally,

     Defendants

_____/

Case No.:  2:07-cv-10541
Hon. Paul D. Borman
Magistrate Donald A. Scheer

John J. Cooper (P53738)
Cooper Law Firm, PLLC
Attorney for Plaintiff
345 Diversion #304
Rochester, MI  48307
248-652-5331
johnjcooper@sbcglobal.net

Theresa M. Asoklis (P42709)
Collins, Einhorn, Farrell & Ulanoff, P.C.
Attorney for Defendant Cox Hodgman
4000 Town Center #909
Southfield, MI  48075
248-355-4141
Theresa.asoklis@ceflawyers.com

Kathleen Klaus P67207
Maddin Hauser
Attorney for Charles Milne
28400 Northwester Hwy.
Southfield, MI  48034
248-827-1899
khk@maddinhauser.com

_____

## BRIEF IN SUPPORT OF DEFENDANT COX, HODGMAN & GIARMARCO P.C.'S MOTION FOR SUMMARY JUDGMENT

(248) 355-4141   SOUTHFIELD, MI 48075   STE 909,   4000 TOWN CENTER   P.C.   COLLINS, EINHORN, FARRELL & ULANOFF,   LAW OFFICES

## I.    Introduction

This legal malpractice case arises out of an underlying Chapter 7 bankruptcy.  Plaintiff Blake Nieswand alleges that defendant attorney Charles Milne was negligent in filing a bankruptcy petition on his behalf while his divorce was pending; failing to advise plaintiff that his wife could enter into a favorable property settlement with the bankruptcy trustee; and by subsequently advising plaintiff that he could dismiss the bankruptcy case by not attending the first creditor's meeting.  (***Exhibit 1****, complaint ¶ 27, 31*).  Plaintiff alleges that as a result of Milne's alleged malpractice his ex-wife and creditors ended up with a substantial amount of their marital property.

Defendant Milne was formerly employed with the law firm of Cox Hodgman & Giarmarco.  Milne's employment with the firm ended **prior** to the filing of plaintiff's bankruptcy petition.  Plaintiff was aware that Mr. Milne was leaving the firm and plaintiff agreed in writing that his bankruptcy would be handled by Milne after he left the firm.  Cox Hodgman did not provide any services to plaintiff relating to the bankruptcy matter and had nothing to do with the bankruptcy filing.  Despite these facts, plaintiff seeks to hold Cox Hodgman vicariously liable for defendant Milne's alleged malpractice.  (*See, count II of plaintiff's complaint,* ***Exhibit 1***).

Plaintiff's claims against Cox Hodgman should be dismissed pursuant to Fed. R. Civ. P. 56 for all of the reasons set forth in defendant Milne's motion for summary judgment (*docket #27*).  In addition, Cox, Hodgman  is entitled to summary judgment because:  (1) Cox, Hodgman & Giarmarco is not vicariously liable for defendant Milne's filing of plaintiff's bankruptcy where that filing occurred after Milne left the firm and where plaintiff had agreed to the Milne representation; and (2) plaintiff's claim against Cox Hodgman belongs to plaintiff's

(248) 355-4141

SOUTHFIELD, MI 48075

STE 909,

4000 TOWN CENTER

COLLINS, EINHORN, FARRELL & ULANOFF, P.C.

LAW OFFICES

1

bankruptcy estate, has not been abandoned by the trustee, and thus, plaintiff lacks the standing to bring any claim against Cox Hodgman.

## II.    Statement of Pertinent Facts

In early 2005, plaintiff Blake Nieswand's life was in turmoil. His business (Metro Data) had failed, he owed a substantial amount of money to his creditors, and he had no income. On Christmas Eve, 2004, plaintiff's wife Michelle discovered that he was having an affair with a Florida waitress. Plaintiff moved from Michigan to Florida in January 2005 where he took up residence in one of the Nieswands' three vacation homes. Michelle Nieswand filed for divorce in the Oakland County Circuit Court on January 11, 2005.

Prior to the divorce action, plaintiff had consulted with attorney Charles Milne who was then associated with the law firm of Cox Hodgman. By December 2, 2004, Mr. Nieswand had determined that "personal bankruptcy is the best option" based upon the discussions he had with Milne, the nature of the debt he had, and his inability to repay it. (***Exhibit 2**, letter from Nieswand to Milne, December 2, 2004*)

The employment relationship between Milne and Cox Hodgman was coming to an end during this time. Mr. Milne ceased being an employee of the firm on October 31, 2004, although the firm agreed to allow Mr. Milne to work out of their offices for a short time, while he searched for other employment. (***Exhibit 3**, defendant Cox, Hodgman & Giarmarco's answers to interrogatories*).

On February 2, 2005, plaintiff paid a $1700 fee to Cox Hodgman for his bankruptcy filing. (***Exhibit 4***) By this time, Mr. Milne was preparing to start his own law practice and had just opened his own client trust account at Independent Bank. (***Exhibit, 5**, records from Milne IOLTA account*). Mr. Nieswand's $1700 retainer was subsequently transferred from the Cox

LAW OFFICES   COLLINS, EINHORN, FARRELL & ULANOFF, P.C.   4000 TOWN CENTER   STE 909,   SOUTHFIELD, MI 48075   (248) 355-4141

2

Hodgman & Giarmarco account to the Charles Milne client trust account on February 22, 2005. (*Exhibit 6*)

On February 24, 2005, Mr. Milne sent a letter to his personal clients advising them that he was leaving the Cox Hodgman firm. Blake Nieswand was sent such a letter as his PO Box in Florida. (*Exhibit 7*) In the letter, Mr. Milne offered plaintiff the choice to stay with the Cox Hodgman firm or to have Milne handle his legal matter on his own. Mr. Milne advised his clients (including plaintiff) of his cell number, his PO Box in Milford and the fact that he would have office space in Detroit at 422 West Congress. Milne requested that Mr. Nieswand countersign a copy of the letter and return it to him. Plaintiff did so.

Plaintiff and Milne met at the Cox Hodgman law office sometime in early March 2005.[1] Plaintiff had traveled to Michigan at this time to both meet with Mr. Milne and to attend a hearing in his divorce action on March 8, 2005. (*Exhibit 8, plaintiff's answers to request for admissions*). It was at this meeting that plaintiff and Milne discussed the fact that Milne was leaving the firm:

> Q. The conversation about his (Milne) leaving, was that a face-to-face conversation, a phone conversation?
> A. It was face-to-face.
> Q. Where were you?
> A. In the office of Cox Hodgman.
> Q. And what did Mr. Milne inform you?
> A. He said that he was going to be joining another firm at that time, and you're welcome to stay with representation at Cox Hodgman, or if you're comfortable, you can – I'll help you with my new firm.
> Q. And did you respond to him at that time?
> A. I said I was comfortable working with Mr. Milne, that, you know, I would prefer to stay working with him. (*Exhibit 9*, *deposition of Nieswand, pp. 128-129*).

---

[1] The exact date of this meeting is uncertain. It definitely occurred before Milne moved out of the firm on March 11th, and most likely occurred between March 4th and March 8, 2005 when plaintiff was in Michigan to attend a hearing in his divorce case.

3

Although plaintiff initially testified that he believed this meeting had occurred after the bankruptcy petition was filed (March 15, 2005), upon further reflection and review of exhibits, he conceded that the meeting took place on or around March 4, 2005:

> Q.   Do you believe, sir, after having reviewed exhibits 43, 44 and 45, that it was on around March 4, 2005 when you met with Mr. Milne and he told you that he was changing law firms?
>
> A.   That's what it looks like. (*Id., p. 141*)

Charles Milne moved out of the Cox Hodgman law offices on Friday, March 11, 2005. (*Exhibit 10*, *deposition of Carole Prindle, p.16*). On March 14, 2005, Mr. Milne wrote checks from his IOLTA account to the bankruptcy court for the filing fee for Blake Nieswand's Chapter 7 petition. (*Exhibit 11*) Mr. Milne filed plaintiff's bankruptcy petition on March 15, 2007. On the petition coversheet, Mr. Milne listed his home address. (*Exhibit 12*)   Cox Hodgman's name did not appear anywhere on the bankruptcy petition[2]. Milne admits he was working out of his home after he left the Cox Hodgman firm on March 11th. (*Exhibit 13*, *deposition of Milne p.79*)  Milne continued to work out of his home until the end of April at which time he joined the Trott & Trott law firm.

After leaving Cox Hodgman, Mr. Milne admits that he never returned to the firm other than to possibly pick up mail and say hello to office staff. (*Exhibit 13*, *deposition Milne p. 98-99*). Mr. Milne was paid a flat fee of $1,491 for plaintiff's bankruptcy petition (*Id. p. 99*). Cox Hodgman did not receive any payment from plaintiff connected with his bankruptcy filing.

---

[2] The PACER docket report lists Charles Milne's address as "101 W. Big Beaver, Troy, MI 48084." This is the address of Cox Hodgman. It is surmised that the clerk who entered this information, ignored the address Milne provided in his cover sheet (2222 S. Hickory Ridge Trail, Milford, MI 48380), and simply inserted an old address for him.

LAW OFFICES   COLLINS, EINHORN, FARRELL & ULANOFF, P.C.   4000 TOWN CENTER   STE 909,   SOUTHFIELD, MI 48075   (248) 355-4141

Thus, by March 11, 2005, Mr. Milne had ceased employment with Cox Hodgman, had moved out of the Cox Hodgman law office, had already met with plaintiff to discuss his departure, and plaintiff had agreed to representation by Milne following this meeting.

In discovery answers, plaintiff relies on four facts in support of his claim that Cox Hodgman is still somehow vicariously liable for the actions of Milne in filing plaintiff's bankruptcy petition. Those facts include:

- William Heritage referred Blake Nieswand to Charles Milne as a lawyer at Cox, Hodgman, and Giarmarco, P.C. who did bankruptcy work.[3]
- Cox, Hodgman & Giarmarco, P.C. lists Mr. Milne as an attorney as of April 8, 2005;[4]
- Upon information and belief, plaintiff paid the costs and attorney fees related to the filing of the bankruptcy with a check made out to Cox, Hodgman & Giarmarco, P.C.[5]

\*\*\*

- Bankruptcy filing lists Charles Milne's firm as Cox, Hodgman & Giarmarco, P.C.[6] (*plaintiff's answer to interrogatories*, ***Exhibit 14***)

After plaintiff's bankruptcy petition was filed by Mr. Milne on March 15, 2005, the bankruptcy trustee and plaintiff's wife, Michelle Nieswand entered into a settlement agreement wherein Michelle Nieswand received a favorable property settlement. Plaintiff alleges that but for the filing of the Chapter 7 petition, the trustee and his wife could not have entered into such a settlement, and plaintiff somehow would have been able to retain more of his property without payment to his former wife or his creditors.

---

[3] This referral occurred in 2004.

[4] While it is true that apparently the Cox Hodgman website continued to list Charles Milne as an attorney with the firm after March 11, 2005, there has been no testimony by plaintiff that he visited the Cox Hodgman website, relied on the Cox Hodgman website or otherwise believed that Cox Hodgman was representing plaintiff in the bankruptcy petition because Milne was still listed on the firm's website.

[5] As shown, the check was deposited by Cox Hodgman, but two weeks later the funds were transferred to the Charles Milne IOLTA account.

[6] Plaintiff is mistaken. The Cox Hodgman firm is not listed in plaintiff's bankruptcy filing.

5

During the bankruptcy, Mr. Nieswand, through his current counsel and expert (Thomas Budzynski) filed a motion seeking to abandon the malpractice claim against Mr. Milne. (*Exhibit 15*). In the motion, plaintiff stated that he "retained Charles Milne for purposes of prosecuting a bankruptcy…" Plaintiff does not claim in the motion that he also retained Cox Hodgman; or that Cox Hodgman represented him. Nor does he make any argument that Cox Hodgman is somehow vicariously liable for plaintiff. The motion was argued to the bankruptcy court on August 21, 2006 and October 23, 2006. (*Exhibits 16 & 17*) In over 40 pages of oral argument, not one mention is made of any potential claim against the Cox Hodgman firm. Following the hearing, the bankruptcy court (the Honorable Stephen Rhodes) entered an opinion and order granting Nieswand's motion for abandonment of the potential malpractice claim "against Charles Milne." (*Exhibit 18*) The court determined that although the claims were property of the estate, they were "of inconsequential value and benefit…"[7]

Thereafter, on February 5, 2007 plaintiff filed his complaint against Charles Milne. However, in addition to Charles Milne, plaintiff also sued Cox Hodgman & Giarmarco (*see count II of plaintiff's complaint*). Plaintiff alleges in count II that Cox Hodgman "through its agent Mr. Milne" is also liable to plaintiff. Specifically, plaintiff complains that that the following actions breached the standard of care:

A) Advising plaintiff to file for bankruptcy while his divorce was pending;

B) Failing to advise Plaintiff that if he filed for bankruptcy that Plaintiff's wife could enter an agreement with the bankruptcy trustee to destroy the tenancy by the entireties by which certain assets were held;

C) Advising Plaintiff that if Plaintiff did not show up for the first meeting of creditors the bankruptcy petition would be dismissed.

---

[7] Judge Rhodes noted that his opinion was not intended to have any preclusive effect in any subsequent litigation "between Nieswand and Milne." (*Exhibit 18*)

6

Cox Hodgman now moves for summary judgment on two bases[8]: 1) plaintiff cannot show that on the date of the alleged malpractice, Milne was an employee or agent of Cox Hodgman and 2) plaintiff's malpractice action against Cox Hodgman is property of the bankruptcy estate, was not been abandoned by the trustee, and therefore plaintiff, Blake Nieswand lacks standing to bring this claim against Cox Hodgman.

### III.    Standard of Review

This Court may grant summary judgment to defendant as a matter of law if the pleadings, depositions, discovery, and admissions fail to show any genuine issue of material fact requiring a jury determination. Fed. R. Civ. P. 56(c). A party moving for summary judgment under Rule 56 may support the motion by demonstrating that the opposing party is unable to meet his burden of proof. *Celotex Corp v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). The party opposing the motion may not rest on the pleadings, but must come forward with affidavits, depositions, or other evidence to establish that a jury questions exists regarding each element of the case. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252, 106 S. Ct. 2505 (1986). Summary judgment is appropriate where the nonmoving party has failed to present sufficient evidence on an essential element of the claim. *Celotex*, *supra* at 322-323.

### IV.    Argument I

> *To prove an employer is vicariously liable for negligent acts of its employees, a plaintiff must show that an employment relationship existed at the time of the alleged negligence. Mr. Milne was not an employee of Cox Hodgman at the time of the alleged malpractice. Additionally, plaintiff cannot prove an ostensible agency existed because there was no conduct on the part of Cox Hodgman that could reasonably lead plaintiff to*

---

[8] Defendant Cox Hodgman & Giarmarco joins the motion for summary judgment filed by defendant Milne (docket #27).

(248) 555-4141   SOUTHFIELD, MI 48075   STE 909.   4000 TOWN CENTER   P.C.   COLLINS, EINHORN, FARRELL & ULANOFF,   LAW OFFICES

> believe Mr. Milne was their agent, where plaintiff admits he
> was informed otherwise.

### A. Mr. Milne was not an employee of Cox Hodgman on the date of the alleged malpractice, i.e, the date that Mr. Milne filed the bankruptcy petition.

In order to prove that an employer is vicariously liable for its employee's negligent acts, the plaintiff must show that there was an employment relationship between the employer and the employee and that the negligence occurred within the scope of the employment. *Rogers v. J.B. Hunt Transport, Inc.*, 244 Mich. App. 600, 605 (2001), *rev'd on other grounds* 466 Mich. 645 (2002). "In Michigan, the test for a principal-agent relationship is whether the principal has the right to control the agent." *Little v. Howard Johnson Co.*, 183 Mich. App. 675, 680 (1990) (franchisor not liable for the torts of a franchisee absent evidence of day-to-day control over the business). Actual agency relationships are created by mutual consent of the parties, not by judicial fiat. *Revitzer v. Trenton Medical Center, Inc.*, 118 Mich. App. 169, 173 (1982).

In this case, there can be no reasonable dispute that there was no employment or agency relationship between Cox Hodgman and Milne at the time Milne filed plaintiff's bankruptcy petition. Mr. Milne ceased his employment relationship with Cox Hodgman by November 1, 2004. He took steps to open his own IOLTA Account in February of 2005, informed his personal clients of his departure and physically moved out of the offices of Cox Hodgman on March 11, 2005. He was not an employee of Cox Hodgman on March 15, 2005, the date the bankruptcy petition was filed.

Because there was no employment or agency relationship between Mr. Milne and Cox Hodgman at the time of the alleged malpractice, Cox Hodgman is not vicariously liable for any acts or omissions of Milne. Summary judgment is warranted.

LAW OFFICES   COLLINS, EINHORN, FARRELL & ULANOFF, P.C.   4000 TOWN CENTER   STE 909,   SOUTHFIELD, MI 48075   (248) 355-4141

**B.**    ***Plaintiff cannot show an agency-principal relationship between Mr. Milne and Cox Hodgman at the time of the alleged malpractice based on ostensible/apparent agency theories.***

It is anticipated that plaintiff will argue that there was an agency-principal relationship between Mr. Milne and Cox Hodgman based on ostensible/apparent agency theories. Under limited circumstances, the courts will hold a non-actor – the putative principal – liable *as though there was actual control* over the actor through an agency relationship through a theory of ostensible agency. When it is activated it imposes respondeat superior liability in the absence of any principal/agent or employer/employee relationship. This notion of an ostensible agency hinges on principles of equity and estoppel. Liability is imposed on an otherwise non-culpable party because *that party, either intentionally or through lack of ordinary care, caused plaintiff to believe* there was a principal-agency relationship and to reasonably rely on it.

Michigan courts have repeatedly emphasized that the ostensible principal/agency relationship turns on the *conduct or objective representations of the putative principal, not the subjective impressions of the plaintiff.* "Apparent authority must be traceable to the principal." *Alar* v. *Mercy Memorial*, 208 Mich. App. 518, 528 (1995). Nor may a plaintiff simply assume or infer the existence of an agency based on general facts or impressions absent representations or conduct on the part of the alleged principal suggesting the relationship. **Ostensible agency does not apply unless there is evidence that: (1) the plaintiff dealt with the agent, reasonably believing in the agent's authority, (2) the reasonable belief was caused by some act or neglect on the part of the principal sought to be charged, and (3) the person relying on the agent's authority is not guilty of negligence.** *Chapa v. St Mary's Hospital*, 192 Mich. App. 29, 33-34 (1991) (emphasis added); *Grewe, supra* at 253.

The apparent authority formulation of this doctrine is stated in very similar terms:

9

> Whenever the principal, by statements or conduct, places the agent in a position where he appears with reasonable certainty to be acting for the principal, or without interference suffers the agent to assume such a position, and thereby justifies those dealing with the agent in believing that he is acting within his mandate, an apparent authority results which replaces that actually conferred as the basis for determining rights and liabilities.  [*Central Wholesale Co v Sefa*, 351 Mich 17, 25 (1957)].

"Apparent authority arises where the acts and appearances lead a third person reasonably to believe that an agency relationship exists." *Alar, supra* at 528.  "Apparent authority must be *traceable to the principal* and cannot be established by the acts and conduct of the agent." *Id.*; *Meretta v. Peach,* 195 Mich. App. 695, 699 (1992). See also *Le Pointe v. Chevrette*, 264 Mich. 482, 493 (1933).  "Agency may not be established by proof of declarations by the supposed agent." *In re Union City Milk*, 329 Mich. 506, 513 (1951). "An implied agency must be based upon facts, and facts for which the principal is responsible, and upon a natural and reasonable but not strained construction of the facts." *Shinabarger v. Phillips*, 370 Mich. 135, 139 (1963).

The concept of ostensible agency/apparent authority is most often raised in the context of *medical* malpractice where a patient is treated at a hospital or clinic by a doctor who is not actually employed by the hospital or clinic. In *Chapa, supra,* the court stressed the requirement that the plaintiff's belief that the treating doctor was an agent of the hospital must be reasonable.  The "key test" is "the reasonableness and actions of the hospital," not simply to whom he was looking to for treatment at the time of his admission. *Id.* at 34.  Even though the plaintiff patient in *Chapa* looked to the hospital for care at the time of admission and was treated briefly by actual non-negligent agents of the hospital, this was not enough to render the hospital liable for the non-employee doctor's actions.

10

Another medical malpractice ostensible agency case is *Vanstelle v. Macaskill*, 255 Mich. App. 1 (2003). On the non-defendant hospital discharge papers, the plaintiff was referred to the allegedly negligent doctor (Dr. U) who had his own practice and also staff privileges at the defendant hospital. The plaintiff called the referral center at St. John to verify that Dr. U was a "St. John doctor" before calling Dr. U's office and was told that he was a "St. John doctor." *Id*. at 4-5. She then called Dr. U's office and scheduled her own appointment. The appointment took place at defendant Riverview hospital, where Dr. U had staff privileges. The court held that neither the St. John defendants nor the Riverview defendants could be liable under an ostensible agency theory. Although the plaintiffs believed that Dr. U was a St. John doctor and relied on that belief that he was an agent of St. John, nothing the St. John defendants did could have reasonably caused the plaintiffs to believe that he was acting as their agent.

"The standard for determining reasonableness is an objective one." *Tansil v. Sherrod*, unpublished per curium in the Court of Appeals, issued November 26, 2002 (Docket No. 237002). Where a consent form signed by the plaintiff patient clearly indicates that the doctors at the hospital are independent contractors, her belief that the doctors are employees is not reasonable. *Id*. It is not even enough if the defendant hospital occupies and controls the facility where the plaintiff is treated, has its name on the consent forms, and signs on the building. *Inglis v. Providence Hospital*, unpublished per curium in the Court of Appeals, issued August 26, 2004 (Docket No. 247066). "[T]his evidence does not create a genuine factual question upon which reasonable minds may differ regarding whether [decedent] believed that the doctor was defendant's agent, or that he relied on that belief in looking to the doctor for treatment." *Id*. at *7.

11

Michigan courts have repeatedly stressed that *the putative principal* must do something to create the appearance of an agency relationship; it is not enough that the alleged agent puts the idea in the mind of the plaintiff or the plaintiff believes he is an agent for any other reason. For example, even where the plaintiff "looks to" the hospital for treatment, if he cites no evidence that the hospital's "actions or neglect generated his purported belief that his treating physicians were employees," summary disposition for the defendant is appropriate. *Miteen v. Genesys Regional Medical Center*, unpublished per curium in the Court of Appeals, issued January 24, 2006 (Docket No. 262410). *See also Drake v. Muskegon General Hospital*, unpublished per curium in the Court of Appeals, issued May 26, 2000 (Docket No. 217747) (Where the plaintiff just "figures" that the allegedly negligent doctor is employed by the hospital, and testifies in deposition that there was nothing the hospital did to lead her to believe the doctor was employed by the hospital, summary disposition for the defendant is appropriate); *Putnam v. Sezgin*, unpublished per curium in the Court of Appeals, issued December 2, 2004 (Docket No. 248053) (where plaintiffs "failed to file any affidavits or other evidence indicating that they dealt with [the doctor] with the reasonable belief that he was an agent of the hospital and that their belief was generated by some act or neglect on the part of the hospital" summary disposition for the defendants is appropriate); *Costanza v. St John Hospital*, unpublished per curium in the Court of Appeals, issued December 26, 2000 (Docket No. 215854) (Where a St. John doctor refers a patient to a specific doctor, not the hospital, no ostensible agency exists between that specific doctor and the hospital, even where the patient receives treatment from that doctor in the hospital).

There are few Michigan ostensible agency/apparent agency cases in other contexts. For example, in *Hall v. Joseph*, unpublished per curium in the Court of Appeals, issued March 2,

(248) 355-4141   SOUTHFIELD, MI 48075   STE 900,   4000 TOWN CENTER   P.C.   COLLINS, EINHORN, FARRELL & ULANOFF,   LAW OFFICES

1999 (Docket No. 206282), a drunk driver struck the injured party as an employee of the tow truck company attempted to fix a flat tire. The plaintiffs brought suit against numerous defendants, including the insurer (AAA) under an agency theory for the tow truck company's negligence. The plaintiffs asserted that the tow company was the ostensible agent of the insurer because the tow truck had a AAA emblem on it as required by AAA, that AAA wanted the driver to identify himself as being from AAA, and that the person the plaintiffs called to request road service identified herself as an AAA representative. The court determined that the plaintiffs "failed to establish a material factual dispute regarding whether they held a reasonable belief" that the tow company has authority to act as agent. No ostensible agency relationship existed because the emergency road services document plaintiff received from AAA specifically indicated that emergency road services were provided by independent facilities, not AAA employees.

Courts in other jurisdictions have addressed the issue of implied agency in the lawyer/law firm context. For example, in *Sheinkopf v. Stone*, 927 F2d 1259 (1st Cir. 1991), the attorney was involved with the plaintiff in "investments gone sour" and the plaintiff tried to implicate the law firm. The court held there was no apparent authority because the law firm was not in the business of soliciting investments and the other members of the firm did not know about the investments. The plaintiff argued that because the attorney used the firm's office, secretary and stationary in dealing with the plaintiff, the issue was a question for the jury. The court disagreed and held that the plaintiff could not have reasonably believed the attorney was acting for the firm in relation to the investment.

Under the facts of this case, plaintiff cannot demonstrate a reasonable belief that Mr. Milne was an agent of Cox Hodgman at the time of the bankruptcy filing. He met with Mr.

13

Milne prior to the bankruptcy filing and was advised that Milne was no longer going to be part of Cox Hodgman. Plaintiff also acknowledged same in writing and he chose to go with Mr. Milne instead of having another attorney from Cox Hodgman handle his bankruptcy matter. This is akin to *Tansil, supra*, where the court found an apparent agency could not have existed where the plaintiff signed a document that clearly indicated the doctor was not with the defendant hospital, and like *Hall, supra*, where the AAA documents in the plaintiff's possession stated the tow companies were independent agents, not agents of AAA.

Additionally, even if plaintiff truly believed (although unreasonably) that Mr. Milne was somehow still an agent of Cox Hodgman, plaintiff would have to demonstrate that *some act of Cox Hodgman* contributed to his belief. Plaintiff will not be able to point to any acts of Cox Hodgman that could have generated a belief that Mr. Milne was their employee or agent at the time Milne filed plaintiff's bankruptcy.[9] Plaintiff did *not* speak with other attorneys at Cox Hodgman regarding his bankruptcy; he only dealt with Mr. Milne on that matter. Plaintiff did not meet with Mr. Milne at the Cox Hodgman offices after their early March meeting. Cox Hodgman employees did not assist with filing the bankruptcy petition. Cox Hodgman did not bill plaintiff for the bankruptcy. Plaintiff will not be able to point to any conduct *on the part of the firm* that could have reasonably led him to believe Mr. Milne was their agent. In sum, any allegations of an implied agency theory are unfounded. Summary judgment on plaintiff's claim against Cox Hodgman is warranted.

## V.   **Argument II**

> ***Blake Nieswand's legal malpractice claim against Cox Hodgman must be dismissed because he is not the real party in interest and therefore lacks standing. Blake***

---

[9] It is anticipated that plaintiff will point to the Cox Hodgman website profile depicting Mr. Milne, which according to plaintiff's attorney, existed as late as April 8, 2005. There is no evidence that plaintiff visited the Cox Hodgman website during the relevant time period or that this website profile played into his alleged belief that Mr. Milne was an agent of Cox Hodgman at the time of the alleged malpractice.

14

*Nieswand's bankruptcy trustee had the exclusive right to assert this malpractice claim, but failed to file suit within the limitations period.*

The bankruptcy code provides that property of a debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). And "it is well established that the 'interests of the debtor in property' include 'causes of action.' " *Bauer v. Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir.1988).

"It is equally clear that the trustee in bankruptcy acts as representative of the estate." *Id.* Under the bankruptcy code, "[i]t is the trustee who 'has capacity to sue and be sued.'" *Id* (citing 11 U.S.C. § 323(b)).

Thus, "[i]t is well settled that the right to pursue causes of action formerly belonging to the debtor . . . vests in the trustee for the benefit of the estate." *Id.* "The debtor has *no standing* to pursue such causes of action." *Id* (emphasis added); *see also Matter of Tvorik,* 83 BR 450, 456 (WD Mich1988). "A debtor's appointed trustee *has the exclusive right to assert the debtor's claim*." *In re Van Dresser Corp*, 128 F3d 945, 947 (6th Cir 1997) (emphasis added).

The Michigan Court of Appeals has applied these principles in a number of cases. The Court's unpublished opinion in *Huffman v Schafer,* 2001 WL 951615 (Mich App, Aug 21, 2001) is directly on point, and is therefore particularly persuasive. The defendant in *Huffman* was an attorney who had represented the plaintiff in an unsuccessful custody action. After the custody case, the plaintiff filed for bankruptcy. Later, the plaintiff sued the defendant for legal malpractice.

The defendant moved for summary disposition, arguing that the plaintiff was not the real party in interest. The plaintiff responded with a motion to amend the caption of the complaint to substitute, or add, the bankruptcy trustee as plaintiff -- but that motion was filed after the statute of limitations had expired.

15

The trial court granted defendant's motion for summary disposition, and denied as futile plaintiff's motion to amend the caption. The Michigan Court of Appeals affirmed. Observing that "[a]n action must be prosecuted in the name of the real party in interest," the Court concluded that the plaintiff had no standing to sue because the plaintiff's legal malpractice claim "became part of plaintiff's bankruptcy estate," and "[a] bankruptcy trustee has the exclusive right to assert claims belonging to the debtor at the time of the bankruptcy filing." *Id* at 2. Summary disposition was properly granted because "Plaintiff's claim for legal malpractice became the property of the bankruptcy trustee, and could be pursued only by the trustee." *Id*. And because the statute of limitations expired before the plaintiff moved to amend his complaint, the trial court's refusal to allow an amendment was proper based on futility. *Id*.

Likewise, in *Bauchan v Cheatham & Acker, P.C.*, 2000 WL 33415950 (Mich App July 21, 2000), at the time the plaintiff filed his legal malpractice suit, he was also involved in a bankruptcy case. The Court of Appeals noted that "[u]nder the rules governing bankruptcy actions, a claim of action (such as the malpractice claims plaintiff was endeavoring to litigate in the trial court) belongs to the trustee in bankruptcy, unless the trustee chooses, or is ordered, to abandon the claim." *Id* at 2 (citing 11 USC §§541, 554). Accordingly, the Court affirmed the grant of summary disposition to the defendant attorney "because plaintiff lacked the capacity to sue and the statute of limitations had run by the time that defendant obtained the right to sue as a result of the bankruptcy court's order requiring the trustee to abandon the causes of action to plaintiff." *Id* at 6.

In this case, plaintiff sought to abandon his claims against Defendant Milne, but never moved to abandon any claims against Cox Hodgman. As such, the claim against the firm belongs to the bankruptcy trustee and plaintiff lacks the standing to bring this claim.

16

## VI.    <u>Relief Requested</u>

Defendant Cox Hodgman & Giarmarco asks this Court to grant its motion for summary

judgment, under Fed. R. Civ. P. 56 and to enter an order dismissing plaintiff's claim against it

with prejudice.

/s Theresa M. Asoklis

Theresa M. Asoklis P42709

Tracey M. Bobo P70049

Attorney for Defendant

Cox Hodgman & Giarmarco, P.C

Theresa.asoklis@ceflawyers.com

P42709

F:\FILES\0707\00319\Motion\BIS MSJrevized.doc

17

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BLAKE NIESWAND

    Plaintiff,

V

CHARLES MILNE and COX HODGMAN
& GIARMARCO, P.C. a domestic professional service
corporation, jointly and severally,

    Defendants

_____/

Case No.: 2:07-cv-10541
Hon. Paul D. Borman
Magistrate Donald A. Scheer

John J. Cooper (P53738)
Cooper Law Firm, PLLC
Attorney for Plaintiff
345 Diversion #304
Rochester, MI 48307
248-652-5331
johnjcooper@sbcglobal.net

Kathleen Klaus (P67207)
Maddin Hauser
Attorney for Charles Milne
28400 Northwester Hwy.
Southfield, MI 48034
248-827-1899
khk@maddinhauser.com

Theresa M. Asoklis (P42709)
Collins, Einhorn, Farrell & Ulanoff, P.C.
Attorney for Defendant Cox Hodgman
4000 Town Center #909
Southfield, MI 48075
248-355-4141
Theresa.asoklis@ceflawyers.com

---

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2008, my secretary Yvonne Rush electronically filed Defendant Cox, Hodgman & Giarmarco's motion for summary judgment and brief in support with the clerk of the court using the ECF system which will send notification of such filing to:

John J. Cooper (P53738)
johnjcooper@sbcglobal.net

Kathleen Klaus P67207
khk@maddinhauser.com

*(vertical left margin text)* LAW OFFICES COLLINS, EINHORN, FARRELL & ULANOFF, P.C. 4000 TOWN CENTER STE 909, SOUTHFIELD, MI 48075 (248) 355-4141

I hereby declare that the statement above is true to the best of my knowledge, information and belief.

BY:     /s/ Theresa M. Asoklis
THERESA M. ASOKLIS
Attorney for Defendant Cox Hodgman & Giarmarco
4000 Town Center, Suite 909
Southfield, MI 48075
(248) 355-4141
Theresa.Asoklis@ceflawyers.com
(P42709)

LAW OFFICES   COLLINS, EINHORN, FARRELL & ULANOFF, P.C.   4000 TOWN CENTER   STE 909,   SOUTHFIELD, MI 48075   (248) 355-4141